Alvin D. Young was indicted for capital murder, to-wit: the murder of Donald R. Brock during robbery in the first degree, a violation of § 13A-5-40 (a)(2), Code of Alabama (1975). He was convicted of said charge, and sentenced according to the jury's recommendation to life imprisonment without parole. *Page 863 
The evidence showed that while watching the Mardi Gras parade in Mobile, the deceased, a street vendor, approached the appellant, wanting to buy some drugs. The appellant, the deceased, and another street vendor went behind a building, where this fatal event occurred. The surviving vendor testified that the appellant pulled a gun on them and robbed them both. The appellant pointed a gun at the deceased's head while asking for the money. During the robbery, the appellant shot the deceased in the head and then fled, taking with him the vendors' money and one of their boxes of merchandise. The appellant later claimed that one of the vendors pulled a knife on him, that he himself was the victim of a robbery, and that it was in self-defense that he drew his pistol. The appellant also claimed that the gun's firing was accidental, saying that one of the vendors hit the gun and it discharged, killing the deceased vendor. Appellant made the other vendor lie down on the ground, picked up one of their boxes, and fled.
Some of the appellant's relatives testified for the state, saying that the appellant had admitted to the killing. It was determined that the appellant's gun was the weapon that fired the fatal shot, and the police found the surviving vendor's cigarette lighter in the appellant's car.
The appellant contends that the prosecutor violated the rules of discovery. Temp. Rule 18.1 (a), A.R.Crim.P., states as follows:
 "(a) Statements of Defendant. Upon motion of the defendant the court shall order the district attorney:
 "(1) To permit the defendant to inspect and copy any written or recorded statements made by the defendant to any law enforcement officer, official, or employee which are within the possession, custody, or control of the state, the existence of which is known to the district attorney; and
 "(2) To disclose the substance of any oral statements made by the defendant before or after arrest to any law enforcement officer, official, or employee which the state intends to offer in evidence at the trial."
Temp. Rule 18.3, A.R.Crim.P., imposes an affirmative duty on the parties to continue to disclose:
 "Subsequent to compliance with an order issued pursuant to Temporary Rule 18.1 or 18.2, and prior to or during trial, if a party discovers additional evidence or decides to use additional evidence, which information has been subject to discovery under this rule, that party shall promptly notify the court and the opposing party of the existence of the additional evidence to allow the court to modify its previous order for additional discovery or inspection."
Consequently, during the arraignment, the prosecutor stated, "The State will provide defense counsel, without necessity of a motion, with any and all statements made by the defendant. . . . In essence, everything but statements of witnesses. . . ."
The appellant gave a recorded statement to the police in which he admitted the shooting, but claimed it was both accidental and in self-defense. A transcript of this statement was timely provided to defense counsel. At trial, counsel for the state asked the police officer if any statement was made after the tape recorder was turned off. Following an objection, this occurred:
"THE COURT: For my benefit, state it again.
 "Q: Did you ask him once the tape was off why he didn't shoot the other man?
"A: Yes, sir.
 "Q: All right. And when you asked him that second time, what did he say?
 "A: He said he didn't have but one bullet in the gun."
This latter unrecorded statement was not disclosed to defense counsel; the defense counsel first heard it when the witness was testifying before the jury. The district attorney represented to the court that he did not learn of this latter statement until the end of the first day of trial, or the morning of the second day of trial. The testimony *Page 864 
regarding the statement came just before lunch on the second day.
The issue is whether or not the failure of the prosecutor to disclose this latter statement mandates a reversal.
Alabama's Rule 18.3, A.R.Crim.P., mandating continuous disclosure, was drafted based on Rule 16 (c), Fed.R.Crim.P. According to the interpretation of this federal rule, where the government has failed to continue to disclose, and the failure substantially prejudices the defense, a reversal is warranted.United States v. McElroy, 697 F.2d 459 (2d Cir. 1982); UnitedStates v. Ible, 630 F.2d 389 (5th Cir. 1980); United States v.Opager, 589 F.2d 799 (5th Cir. 1979); United States v. Scruggs,583 F.2d 238 (5th Cir. 1978), reh'g denied, 588 F.2d 829 (5th Cir. 1979).
Our Supreme Court has said, in dealing with another criminal procedure rule, 15.4 (b), which deals with consolidation, that "[t]he purpose of Rule 15 (b), Alabama Temporary Rules of Criminal Procedure, can only be served by strict compliance with it." Jones v. State, 473 So.2d 545, 546 (Ala. 1985). Likewise, Federal Rule 16 is strictly enforced.
 "A new trial with this nail in the coffin lid, now fully disclosed, may likely result in another verdict of guilty. Nevertheless, the vindication of Rule 16, and notice to prosecutors in this Circuit that they must effectively comply with it, leaves no choice but to reverse these convictions and remand for a new trial."
United States v. Pascual, 606 F.2d 561, 566 (5th Cir. 1979). This does not mean, however, that the rules will be enforced blindly; the trial judge has some discretionary power to grant relief for violation of the discovery rules:
 "Noncompliance. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; grant a continuance if requested by the aggrieved party; prohibit the party from introducing evidence not disclosed; or enter such other order as the court deems just under the circumstances."
Temp. Rule 18.5 (a), A.R.Crim.P. This rule is based on Rule 16 (d)(2), Fed.Rd.Crim.P.
Toward the end of the recorded statement, the appellant was asked, "Why didn't you shoot the other boy that was laying on the ground?" The appellant answered, "Because like I said, I was just trying to protect myself. I was scared." The undisclosed statement following that statement is wholly different, for it implies that he would have intentionally
killed both vendors if he had had more than one bullet, whereas the disclosed statement consistently implied a lack of specific intent to kill. Although the disclosed statement contains references to having only one bullet, they were in no way linked to the appellant's state of mind.
The prosecution relied heavily on this statement in summation, which concluded as follows:
 ". . . and when you think about the line of, `it's cool, it's cool, ain't nobody seen me,' think about this. The last question I asked Sgt. Boone was, did you ask him once the tape was off the question why didn't you shoot —
 "MR. BRUTKIEWICZ: Judge, I'm going to have to reiterate my objection and emphasize it, the necessity for my original objection.
"THE COURT: And I overrule your objection.
 "MR. GALANOS: On the night of March 6th, after the formal statement was made and this man had been Mirandaed, he was asked, why didn't you shoot both vendors, and his response, again, which shows a rather cold-hearted, calculating animal, is, I didn't have but one bullet in the gun. There again, that just destroys the notion that an accident *Page 865 
took place and serves just to fortify, carved in stone, the fact that what you've got is a cold-blooded murder, which got him about $150.00, a Smurf doll, a flashlight and two Michael Jackson buttons, and I would submit to you that the life of Donald R. Brock was worth one hell of a lot more than that, and I further submit to you that from the evidence, specifically the admissions which he made to other people, the arrogance which he demonstrated, the total lack of concern that he demonstrated for the life of another human being, that he is guilty and ought to be adjudicated as such."
The prosecutor was obligated to "promptly notify the court and the opposing party of the existence of the additional evidence," Temp. Rule 18.3, A.R.Crim.P., before eliciting such testimony during the trial. He violated the rule when he failed to notify them. Such failure to disclose substantially prejudiced appellant's rights. Rule 16, Fed.R.Crim.P. We are here presented with the question of whether to uphold this rule of criminal procedure. The crime was horrible. The statement, however damning, was just one sentence. The temptation to rationalize away the violation is great. We find the answer to this question in a return to fundamentals. The Alabama Supreme Court adopted this rule effective April 1, 1984. The Code of Alabama, § 12-3-16, provides this mandate:
 "[t]he decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals, and the decisions and proceedings of such courts of appeals shall be subject to the general superintendence and control of the Supreme Court as provided by constitutional amendment No. 328."
Amendment 328, § 6.11 grants the Supreme Court the power to "make and promulgate . . . rules governing practices and procedure in all courts." We therefore apply the plain language of the rule to the undisputed facts, and arrive at the conclusion that the case must be reversed upon the grounds set forth.
REVERSED AND REMANDED.
All the Judges concur.