TYSON, Judge.
Andrew Charles Brown, alias was indicted for first degree robbery in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant “guilty of robbery first degree as charged in the indictment.” He was sentenced as a habitual felony offender to imprisonment in the penitentiary for a term of life without parole.
Becky Roark testified that at approximately 4:00 p.m. on January 14, 1986, the appellant entered the store where she was working as a cashier, and asked if she had any get-well cards. The store was a small gift shop known as “Neons” located at 2835 Highland Avenue in Birmingham, Alabama. He proceeded immediately to that part of the store where the cards were *884 located and then returned with a card to the cash register. After he gave Ms. Roark his money and she opened the cash register drawer, the appellant went around to Ms. Roark’s side of the counter, pulled a gun and demanded that Ms. Roark give him all of her money.
Ms. Roark testified that the appellant took approximately two hundred dollars and possibly a jar containing change. Ms. Roark’s sister, Mandy, was the only other person in the store at the time of the robbery. Ms. Roark described the robber to the police as having been a black male of slight build with a mustache, wearing a brown leather jacket and a dark colored toboggan hat with stripes. He had entered the store approximately one half hour before the robbery to get some change. Ms. Roark testified that she had also seen the appellant in the store a couple of months before the robbery.
After the appellant took the money, he ordered Ms. Roark and her sister to lie on the floor in the back room of the store. He told them that if they moved he would kill them. He then left the store.
A few days after the robbery occurred, Ms. Roark viewed a police line-up. She identified a man named Terry Yancy as a suspect, but did not make a positive identification. She testified that she had been to a preliminary hearing and had seen the appellant there. The appellant contends, however, that he was in jail at the time of this hearing.
Mandy Roark then testified, corroborating her sister’s testimony concerning the robbery, and identifying the appellant as the perpetrator. She described the perpetrator to the police as having been a black male, five feet seven inches tall, weighing 135 pounds. He was wearing a brown leather jacket and a brown, blue and red striped toboggan hat.
The day after the robbery Mandy viewed a photo line-up but did not make a positive identification of the appellant. She also attended a live line-up approximately a week after the robbery, but was unable to make an identification. She testified that the gun used in the robbery was small and gold in color. During a second live line-up Mandy positively identified this appellant as the perpetrator of the robbery. (R. 140, 158) During a pre-trial hearing Mandy positively identified the appellant from a photo line-up. (R. 154) Her identifications were based upon having seen the appellant during the time of the robbery. (R. 161)
Mike Fisher, an investigator with the Birmingham Police Department, testified that he showed Becky and Mandy Roark photos of suspects two days after the robbery. They both identified the appellant at that time. (R. 166) He also conducted two live line-ups. The appellant was not included in the first one. After viewing the first lineup, Becky was unsure whether or not the perpetrator was present, but Mandy stated that none of the individuals resembled the perpetrator. (R. 170) Mandy positively identified the appellant as the perpetrator at the second line-up.
Fisher testified that the appellant was present during the preliminary hearing and was seated in the spectator’s area of the courtroom. The appellant was not sitting in the area where those who are in custody normally sit. (R. 174) Becky Roark was present at the hearing and was able to identify the appellant as the person who robbed her at that time. (R. 176).
Cleveland Moore, a sheriff's deputy with the Jefferson County Sheriff's Department, testified that on the day of the preliminary hearing the appellant was not in jail. (R. 194)
Ethel Tyson, a defense witness, testified that the day after the robbery she rode in an automobile with two black males, N.D. Farris and Vernon Lowe. She noticed that there were two guns in the front seat of the car. She also observed a jar of money in the front seat. One of the guns was small and shiny in color.
Ms. Tyson testified that on the day of the robbery she saw Farris wearing a brown leather jacket and a dark blue skull cap. (R. 207) She described Farris as being approximately five feet four inches tall and weighing approximately 143 pounds. Ms. Tyson then identified Defendant’s Exhibit *885 2, which depicted a robbery in progress wherein the perpetrator is wearing a brown and yellow striped toboggan hat, as a photograph of Farris. (R 218) She knew the appellant and stated that he was not in the habit of wearing toboggan hats.
Helen Carter, the appellant’s cousin, testified that she knew Farris. On more than one occasion he had altered his appearance in order to look like this appellant. (R. 224) She testified that the appellant has used his brother’s name on previous occasions when he was arrested. (R. 226) She testified that the appellant and Farris resembled each other. (R. 230)
Mandy Roark was recalled by the defense. She identified Defendant’s Exhibit 2 as a photograph of the appellant. (R. 236)
Cynthia Thomas testified that the appellant was with her at her home in the Nor-wood section from 12:00 noon until 8:00 p.m. on the day of the robbery. (R. 247) She was shown a photograph of the appellant (Defendant’s exhibit 1) and identified it as a photograph of N.D. Farris. (R. 250)
On rebuttal Phillip Johnson, a Birmingham police officer, testified that he arrested the appellant the day after the robbery for a violation of the State Firearms Act. (R. 264-265) He had discovered two handguns in the glove compartment of an automobile in which the appellant was riding. (R. 264)
Donald Reynolds testified that he was called to the scene of the appellant’s arrest by Officer Johnson. He observed a brown and yellow striped toboggan-type hat in the appellant’s pocket at that time. (R. 273) He took it from the appellant’s pocket. It was eventually admitted into evidence in this case. (R. 310)
Reynolds then questioned the appellant concerning Defendant’s Exhibit 2, which was in Reynold’s possession at the time. The exhibit was a photo of N.D. Farris committing a robbery on January 8, 1986 with the same hat in his possession. In response to questioning the appellant stated that the hat he had at the time of this robbery was the same hat that appeared in the photo but that the person in the photo was N.D. Farris. (R. 279) He stated that he had borrowed the hat from Farris. (R. 318)
Reynolds testified that, when he saw the appellant on January 15, 1986, the appellant had a mustache and bumps on the sides of his face. He had a smooth complexion at the time of the trial. A few days prior to January 24, 1986, N.D. Farris had a smooth complexion.
Cathy Edgemon testified that she was working at a Spur Service Station on January 10, 1986 as a cashier. The appellant came into the station twice that night wearing a dark colored toboggan-type hat. She corroborated Reynold’s testimony concerning the appellant’s changed appearance. (R. 324) During cross-examination concerning the appellant’s appearance at that time, the witness stated:
“It wasn’t real bad, but I have a tendency to notice things like that, like I said, he came in twice and got a Coke and then he came in again and stuck a gun to my head, so — .” (R. 325)
I
The appellant contends that the trial judge erred in failing to grant his motion for mistrial on the grounds that Ms. Ed-gemon’s statement concerning the previous robbery, involving the appellant on January 10, 1986, was inadmissible as tending to show his commission of another independent and unconnected crime.
After this statement was made, the trial judge gave the following curative instructions:
“THE COURT: What the concern is, obviously, folks, the proposition that you try somebody for one misconduct, one crime obviously, we are not trying the case — where did you say you work, ma’am?
“THE WITNESS: Spur Station.
“THE COURT: We are not trying any illegal activities that happened at the Spur Station, all right? I’m going to ask you something that is difficult, maybe, we are not trying this case, and this lady slipped up and said something about a *886 gun, right. Can you disregard that? I’m going to ask each one of you to think about it for a minute and I’m going to come back to you. It is not part of the case and it is not admissible. Everybody knows it here, the Judge knows it and the lawyers know it. We don’t expect you people, lay people to come in here and know things like that. I want him back in here, please. Think about it and I will ask you in a minute if you can disregard the thing about the gun and if you can, we will proceed and if you can’t, we will do something else, but that is illegal and prejudicial.
“(Recess.)
“(Jury present.)
“THE COURT: The law has always deemed it — we try to have a fair trial, right, you people are selected to serve on the jury because you don’t know anything about any of us or about any of this allegedly happening at Neon’s, and it developed in the course of the cases and so forth that you try a person for one alleged act of misconduct, and it has been said to be inherently unfair for the government, the State of Alabama in this case, to heap onto the facts about the Neon’s case evidence of other misconduct. You know, you don’t want to have any spillover effect. The question is whether or not this man committed the robbery at Neon’s and much has been said about the identification. Now, we have had a slip up here, something mentioned about a gun at another location, that is not legal evidence, it is inadmissible, but on some occasions if the jurors can say they can disregard a certain piece of information and then retire ultimately and deliberate and consider the facts that were legally admitted, then it might be that this case can go forward, but please be honest with me, can you disregard what the lady said about the gun being pulled — and where do you work again?
“THE WITNESS: I work at the Spur Station.
“THE COURT: Can you do that, can you segregate it out of your minds? We know you are mature people and adults, sophisicated people, if you tell me you can do that, then I’m going to consider going forward with the case. You’ve had some time to reflect on it, I’m going to ask each individual if you can do that. “(Whereupon, the Court asked each individual juror if they could disregard the statement of the witness and they all answered affirmatively that they could.)” (R. 326-328)
[I]t is well recognized that the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury’s ability to decide the defendant’s fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion ...’”
Retowsky v. State, 333 So.2d 193, 201 (Ala.Crim.App.1976) (quoting Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967)).
“A mistrial will not be granted on motion of defendant where the court has sustained his objections to alleged improper argument and excluded it from the jury’s consideration, unless it clearly appears that the defendant’s rights have been so prejudiced as to render a fair trial a matter of grave doubt.”
Watson v. State, 266 Ala. 41, 93 So.2d 750 (1957) (citations omitted).
The trial judge did not clearly abuse his discretion in denying this appellant’s motion for mistrial. An adequate curative instruction was given promptly after the statement was made. The jurors individually responded that they could disregard the statement. The statement was not so prejudicial to the appellant that it could not be cured by the instruction. Watson, supra. We find no error here. See also Thomas v. State, 445 So.2d 936 (Ala.Crim.App.), rev’d on other grounds, 445 So.2d 939 (Ala.1983) (no prejudicial error occurred in admitting testimony concerning appellant’s possession of marijuana, in prosecution for receiving stolen property, where trial court gave prompt instruction to the jury).
*887 II
The appellant challenges the weight and sufficiency of the evidence. He argues that the trial court erred in refusing to grant his motions for judgment of acquittal and new trial. We disagree.
The crime of first degree robbery is defined as follows:
“(a) A person commits the crime of robbery in the first degree if he violates § 13A-8-43 and he:
“(1) Is armed with a deadly weapon or dangerous instrument; or
“(2) Causes serious physical injury to another.”
Section 13A-8-41, Code of Alabama 1975. Section 13A-8-43 provides:
“(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) Uses force against the person of the owner or any person present with the intent to overcome his physical resistance.”
The Roark sisters both testified that the appellant entered the store, demanded money from the cash register at gun point and threatened to kill them if they did not remain in the back room of the store. Although there was conflicting evidence presented as to the identity of the perpetrator, the fact remains that the State presented proof of every element of the crime charged. “ ‘Conflicting evidence presents a jury question not subject to review on appeal, provided the State’s evidence establishes a prima facie case....’” Carroll v. State, 492 So.2d 323 (Ala.Crim.App.1986). We find that there was sufficient legal evidence presented by the State to allow the jury to conclude beyond a reasonable doubt that the appellant was guilty of this robbery in the first degree. The trial judge committed no error in denying the motion for judgment of acquittal and also for a new trial.
III
The appellant contends that the trial court erred in allowing the State to introduce into evidence the toboggan hat, the testimony concerning the manner in which it was obtained by police and the statement he made to police concerning it. He argues that the State violated the discovery order entered pursuant to his Motion For Production. The appellant alleges that he was prejudiced because he would not have introduced his Exhibit No. 2 (the photo of a prior robbery wherein the perpetrator is wearing the toboggan), had the State produced the toboggan and his statement concerning it, before trial. We find his contentions to be without merit.
We note that the appellant has failed to state any legal authority in his brief on appeal in support of his argument. This court has held that in such cases the appellant’s issues are waived. Johnson v. State, 500 So.2d 494 (Ala.Crim.App.1986); Andrews v. State, 473 So.2d 1211 (Ala.Crim.App.1985); Vinzant v. State, 462 So.2d 1037 (Ala.Crim.App.1984).
We also note that, at least with respect to the testimony concerning the hat and statement, the appellant failed to properly preserve this issue for our review. No objection was made by the appellant when, the admission of this testimony was proposed to the court by the State out of the presence of the jury. (R. 256-261) The appellant also failed to object when the testimony concerning the hat and statement was first introduced. (R. 273-279) See Luster v. State, 433 So.2d 481 (Ala.Crim.App.1983); Coon v. State, 432 So.2d 558 (Ala.Crim.App.1983).
Nevertheless, we have considered the appellant’s contentions with respect to the admission of the tangible (the hat) and documentary (the written statement) evidence, and find them to be without merit.
The appellant cited the case of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in support of his argument at trial at the time he first objected to the admission of this evidence. (R. 289) The Brady doctrine is clearly inapplicable here. See Killough v. State, 438 So.2d 311 (Ala.Crim.App.1982), rev’d on other grounds, 438 So.2d 333 (Ala.1983). This is not a situation where the State has *888 attempted to suppress evidence favorable to the accused. On the contrary, the State was attempting to introduce evidence which was inculpatory in nature.
It is clear that no violation of the trial court’s discovery order occurred. The State was unaware of the existence of the hat and statement until after it viewed Defendant’s Exhibit No. 2 during the morning session of the trial. (R. 256-257)
Apparently Officer Fisher discovered the hat sometime after Defendant’s Exhibit No. 2 was introduced. (R. 257) Over the lunch recess Sergeant Reynolds, who had investigated the robbery which was the subject of the photo (Defendant’s Exhibit No. 2) (R. 258), informed the State of the significance of the toboggan hat and its connection with the appellant. (R. 293) The State immediately advised appellant's counsel of the existence and significance of the evidence. (R. 292-293)
Because the State was unaware of the existence of this evidence until the lunch recess, it would have been impossible to produce it at an earlier time. The record indicates that the State promptly informed the appellant of the existence of the evidence as soon as it became aware of it. No error occurred here. Martin v. State, 482 So.2d 1272 (Ala.Crim.App.1985). See also Clemons v. State, 491 So.2d 1060 (Ala.Crim.App.1986).
IV
The appellant contends that the trial court erred in allowing the State to introduce Officer Phillip Johnson’s testimony concerning the appellant's arrest for a violation of the State Firearms Act. He argues that the evidence was inadmissible as tending to show his commission of another independent and unconnected crime.
We note that the appellant failed to properly preserve this issue for our review. (See discussion under section III of this opinion, supra.) No objection was made by the appellant when the admission of this testimony was proposed to the court by the State out of the presence of the jury. (R. 256-261) The appellant also failed to object when the evidence concerning his arrest by Officer Johnson was first introduced. (R. 262-272). He also failed to object to this evidence on the grounds asserted here, at the time he entered his objections, following the admission of this testimony. (R. 288-292) See Fisher v. State, 439 So.2d 176 (Ala.Crim.App.1983). See Luster, supra; Coon, supra.
Nevertheless, we have considered the appellant’s contentions, and find them to be without merit.
“As a general rule, in the prosecution for a particular crime, evidence of other acts which of themselves constitute distinct and independent offenses is not admissible. However, this general rule is subject to several well-established exceptions. Pack v. State, 461 So.2d 910, 913-14 (Ala.Crim.App.1984), and cases cited therein; Jones v. State, 460 So.2d 1384, 1388 (Ala.Crim.App.1984); and cases cited therein. Evidence of other crimes may be admitted in the trial of the now-charged crime when it is relevant to the now-charged crime and tends to prove an element of the now-charged crime which is at issue. Jones, 460 So.2d at 1388; Seymore v. State, 429 So.2d 1188 (Ala.Crim.App.1983).”
Popwell v. State, 480 So.2d 41 (Ala.Crim.App.1985).
The identity of the perpetrator was clearly the main issue to be resolved in this case. The State presented testimony from both of the Roark sisters that the appellant was wearing a dark colored toboggan hat on the day of the robbery. Cathy Edgem-on testified that she had seen the appellant wearing a dark colored toboggan hat four days before this robbery. Sergeant Reynolds’ testimony concerning the finding of a similar hat in the appellant’s possession the day after this robbery was, therefore, material to the determination of the identity of the perpetrator of this robbery.
Officer Johnson’s testimony concerning the appellant’s arrest was necessary for the admission of the toboggan hat since it was seized pursuant to the appellant’s arrest. This testimony was, therefore, relevant to the crime charged here. *889 Popwell, supra. See Vasser v. State, 366 So.2d 381 (Ala.Crim.App.1979); Franklin v. State, 38 Ala.App. 274, 82 So.2d 316 (1955); Murphy v. State, 52 Ala.App. 490, 294 So.2d 457, cert. denied, 292 Ala. 743, 294 So.2d 462 (1974). See also Carroll v. State, 440 So.2d 1168 (Ala.Crim.App.1983); Whitley v. State, 37 Ala.App. 107, 64 So.2d 135 (1953)
The probative value of this evidence was not substantially outweighed by any prejudice which may have resulted. See Averette v. State, 469 So.2d 1371 (Ala.Crim.App.1985). During cross-examination of Officer Johnson, the appellant’s counsel alluded to the fact that the appellant had been found innocent on the firearms charge. (R. 305) We hold, therefore, that the trial judge committed no error in admitting this evidence.
For the above-stated reasons, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.