Zephyriuns C. Egbuonu was convicted of two counts of identity theft, violations of § 13A-8-192, Ala. Code 1975. He was sentenced to 10 years' imprisonment for each conviction, to run consecutively.
The evidence adduced at trial indicated the following. In December 2002, James Roberson, deputy chief of operations with the Jefferson County Sheriffs Department, *Page 37 
received a telephone call from the credit card division of Capital One, inquiring whether he had attempted to open an account at a TJ Maxx discount department store. He had not, and he was informed that someone had attempted to open an account using his name and his Social Security number, but using other identifying information, such as date of birth and address, that was false. Deputy Roberson then contacted other credit companies and learned that someone had opened an account with Mervyn's department store, owned at that time by Target Corporation, using his name and Social Security number, but otherwise false identifying information. Deputy Roberson further learned that other accounts had been opened using his name and Social Security number at La Redoute, Chadwick's, and Victoria's Secret, all clothing retailers, but again, with other identifying information that was false.
The State presented evidence indicating that the Mervyn's account in Deputy Chief Roberson's name was opened on October 1, 2002. The credit application submitted for the account listed Deputy Chief Roberson as the applicant and his correct Social Security number, but listed the home address as 4859 Slauson Boulevard, No. 268, Los Angeles, California, which was later determined to be a rental mailbox at a Mailboxes, Etc., store. The application listed as a previous address the address where Deputy Chief Roberson resided. The same day as the account in Deputy Chief Roberson's name was opened, another account was opened at Mervyn's under the name Rosemary Roberson. Deputy Chief Roberson testified that his wife's name is not Rosemary. The credit application submitted for this account also listed 4859 Slauson Boulevard, No. 268, Los Angeles, California, as the home address.[1] In October and November 2002, respectively, the name Jerome Bivens was added to both of these accounts by telephone. The interactive voice-response system used by Target Corporation captured the telephone number from which the first call came — the call that added Jerome Bivens to the account in Deputy Chief Roberson's name. The telephone number from which the second call came — the call that added Jerome Bivens to the account in the name of Rosemary Roberson — was not captured by the system. Several charges were subsequently made to these two accounts in one of Mervyn's stores in Westchester, California, and multiple checks were sent as payment on the two accounts in December 2002 and January 2003. However, the checks were written on an account in the name of Matthew Kittiko and the account had been closed.
Expert testimony was presented indicating that the handwriting on the credit applications for both of the accounts at Mervyn's was Egbuonu's handwriting, and that the handwriting on the checks signed with the name Matthew Kittiko was Egbuonu's handwriting. The State also presented evidence indicating that the telephone call adding the name Jerome Bivens to the account in Deputy Chief Roberson's name was placed from the number of a cellular telephone later found in Egbuonu's apartment. In addition, the State presented evidence that mailbox 268 at the Mailboxes, Etc., store at 4859 Slauson Boulevard in Los Angeles, California, had been rented in the name of Jerome Bivens only two days before the credit applications had been signed, and that the names James Roberson and Rosemary Roberson were *Page 38 
also listed on the mailbox-rental agreement as persons authorized to receive mail at mailbox 268. Although the handwriting on the mailbox-rental agreement was not found to be Egbuonu's writing, [2] the owner of the Mailboxes, Etc., store positively identified Egbuonu as the person he knew as Jerome Bivens and who picked up mail from mailbox 268.
 I.
Egbuonu first contends that § 13A-8-192 and § 13A-8-196, Ala. Code 1975, are unconstitutional. Egbuonu makes several arguments in this regard, all of which he raised in a pretrial petition for a writ of habeas corpus that was denied by the circuit court. Egbuonu appealed that denial, and this Court, treating Egbuonu's appeal as an original petition for a writ of habeas corpus, addressed and rejected Egbuonu's claims. See Ex parte Egbuonu, 911 So.2d 748
(Ala.Crim.App. 2004). For the reasons stated in that opinion, Egbuonu's claims are meritless.
 II.
Egbuonu contends that he was "denied his right to have witnesses appear on his behalf when he was forced to pay for the prosecution's witnesses to appear." (Egbuonu's brief at p. 16.) Specifically, he argues, as he did in his motion for a new trial, that the trial court's ordering him, at his sentencing hearing in August 2005, to pay for the travel and lodging costs of the State's out-of-state witnesses rendered him "unable to pay for a proper defense" at his trial in May 2005 and thereby denied him the right to present a defense. (Egbuonu's brief at p. 18.) The record does not indicate, and Egbuonu does not allege, that he was aware, or even that he had the belief, before or during his trial that, if convicted, he would be ordered to pay for the costs of the State's witnesses. He merely alleges that the trial court's order at sentencing made "him unable to afford to bring his own witnesses from California." (Egbuonu's reply brief at p. 4.) However, we fail to see how the trial court's order at sentencing in August 2005 could have possibly had any retroactive effect on Egbuonu's right to present a defense at his trial, which occurred three months earlier in May 2005, and Egbuonu's argument that it did have such a retroactive effect is specious at best.[3]
Therefore, we find no merit to this claim.
 III.
Egbuonu contends that he was denied a fair trial because, he says, "he was convicted using improperly admitted evidence." (Egbuonu's brief at p. 18.) In his initial brief, Egbuonu appears to make three arguments in this regard. One of these arguments, Egbuonu concedes in his reply brief, is meritless; thus, that argument will not be addressed by this Court. The remaining two arguments fail to comply with Rule 28(a)(10), Ala.R.App.P.
Rule 28(a)(10), Ala.R.App.P., requires that an argument contain "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." "Recitation of allegations without citation to any legal *Page 39 
authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed."Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App. 2002). "Authority supporting only `general propositions of law' does not constitute a sufficient argument for reversal."Beachcroft Props., LLP v. City of Alabaster,901 So.2d 703, 708 (Ala. 2004), quoting Geisenhoff v. Geisenhoff,693 So.2d 489, 491 (Ala.Civ.App. 1997).
 "We have stated that it is not the function of this court to do a party's legal research. See Henderson[ v. Alabama A M University], 483 So.2d [392,] 392 [(Ala. 1986)]. Similarly, we cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument. Ala.R.App.P. 28(a)(5) [now Rule 28(a)(10), Ala.R.App.P.]; Brittain v. Ingram, 282 Ala. 158, 209 So.2d 653 (1968) (analyzing the predecessor to Ala. R.App.P. 28); Ex parte Riley, 464 So.2d 92 (Ala. 1985)."
Spradlin v. Spradlin, 601 So.2d 76, 78-79 (Ala. 1992). To obtain review of an argument on appeal, an appellant must provide record citations to indicate where the allegedly improper evidence was admitted over a proper and timely objection, citations to relevant cases or other legal authorities, and an analysis of why those cases or other authorities support an argument that an error occurred and that the alleged error should result in reversal.
First, Egbuonu argues that his conviction "was obtained using hearsay evidence." (Egbuonu's brief at p. 18.) After citing and quoting general propositions of law regarding hearsay and the right to confrontation, Egbuonu argues:
 "[Egbuonu] was denied the opportunity to confront and cross-examine Dolly Guttirez, R. 268-88, Jerome Bivens, R. 168, 239-241, 285, Rosemary Robertson, R. 246, or Sean Altpeter, R.1999."
(Egbuonu's brief at p. 20.) Egbuonu provides a list of names and citations to pages in the record, but fails to actually identify what hearsay evidence he believes was improperly admitted. Citations to the record without any recitation of facts or any indication as to what occurred during trial that forms the basis for the argument on appeal is not sufficient to comply with Rule 28(a)(10). Nor does Egbuonu provide an explanation of how the general principles of law he cites support his claim of error. Therefore, as to this issue Egbuonu has failed to comply with Rule 28(a)(10), and the issue deemed to be waived.
Egbuonu also argues:
 "Also, [Egbuonu] was convicted upon evidence that was not properly authenticated. In order for evidence to be authenticated, sufficient evidence must be presented to support a finding that the matter in question is what its proponent claims. A.R.E. 901. R. 363, 370, 383."
(Egbuonu's brief at p. 21.) Again, although Egbuonu provides citations to the record, he fails to identify what evidence he believes was not authenticated, and he does not make any argument as to why he believes the unidentified evidence was not properly authenticated. Although Egbuonu cites to Rule 901, Ala.R.Evid., he makes no argument regarding how Rule 901 supports his claim of error, and he does not provide any other authority in support of his claim. Therefore, this issue also fails to comply with Rule 28(a)(10), and is deemed to be waived.
 IV.
Egbuonu next contends that he was denied a fair trial because, he says, the State withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). Specifically, *Page 40 
he argues that the State failed to disclose videotapes from the security cameras at the Mervyn's store in Westchester, California, where the falsified Mervyn's account in Deputy Chief Roberson's name was used. He maintains that these videotapes would have shown that the person using the falsified Mervyn's card was not, in fact, him.
The record indicates that the first mention that there may have been videotapes of the person who made the purchases at the Mervyn's store in Westchester, California, was during the testimony of the State's first witness, a financial investigations coordinator for Target Corporation who began the investigation into the fraudulent Mervyn's accounts. The information regarding the videotapes was brought out on cross-examination by defense counsel. However, counsel lodged no objection at that time. The next mention of the existence of videotapes was during the testimony of the State's fourth witness, a detective with the Los Angeles, California, police department, who testified that he had viewed videotapes from the Mervyn's store in Westchester, California, but that "based on the angle and the graininess" of the videotapes, he could not identify anyone in the videotapes, including Egbuonu. (R. 207.) Egbuonu lodged no objection. The final mention of the videotapes came during the testimony of the State's fifth witness, a detective with the Los Angeles County Sheriffs Department, who testified that he, too, had viewed the videotapes, but was unable to identify anyone. Specifically, he said that during one of the transactions the camera had been moved from focusing on the cash register to focusing on another area of the store and thus did not capture the person who had used the falsified Mervyn's account. Again, Egbuonu did not object. Egbuonu raised this claim for the first time in his motion for a new trial.
In Mitchell v. State, 706 So.2d 787
(Ala.Crim.App. 1997), this Court addressed a similar issue, stating:
 "Mitchell contends that he is entitled to an acquittal or a new trial because of alleged prosecutorial misconduct. He argues that the State breached a discovery agreement between the parties by not producing certain material evidence he requested and that the State actively misled him as to the existence of that evidence, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). According to Mitchell, the prosecution failed to disclose information gotten as a result of an interview with Isaac Ruffin contrary to the State's representation in open court before trial that the information did not exist. Mitchell contends that Ruffin's testimony was prejudicial because it contradicted Mitchell's version of the events of that night, thus casting doubt on Mitchell's credibility. Also, Mitchell contends that defense counsel would have changed the way they prepared and presented the case had they been made aware of this information.
 "In a tape-recorded statement given to police on July 23, 1993, Ruffin stated that no one was with Mitchell when Mitchell borrowed and then returned Ruffin's car. However, according to the defense, later that same day Ruffin told Detective Long that someone had been with Mitchell when he borrowed the car. `The knowledge of government agents working on the case, including a deputy sheriff, as to the existence of exculpatory evidence will be imputed to the prosecutor. Sexton v. State, 529 So.2d 1041, 1045 (Ala.Cr.App. 1988).' Savage v. State, 600 So.2d 405, 407 (Ala.Cr.App. 1992), cert. denied, 600 So.2d 409 (Ala. 1992). *Page 41 
 "Mitchell contends that he was first made aware of the Ruffin's upcoming testimony when the State alluded to it during opening statements. No objection was made at this time. At trial, Ruffin testified that a short, skinny, dark-skinned male was with Mitchell when Mitchell borrowed and then returned Ruffin's car. R. 368-69, 580. No objection was raised when Ruffin offered this testimony at trial. The defense thoroughly cross-examined Ruffin concerning his statements. The first time an objection was made on the ground that the State had failed to disclose this statement before trial was in Mitchell's motion for a judgment of acquittal made after the State rested. `[T]he appellant failed to properly preserve this issue for our review. No objection was made by the appellant when the admission of this testimony was proposed to the court by the State. . . . The appellant also failed to object when the testimony concerning the . . . statement was first introduced.' Brown v. State, 516 So.2d 882, 887 (Ala.Cr.App. 1987) (the appellant argued that the State had violated a discovery order entered pursuant to his motion for production) (emphasis in Brown).
 "`"`If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this [Brady] rule, or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; grant a continuance if requested by the aggrieved party; prohibit the party from introducing evidence not disclosed; or enter such other order as the court deems just under the circumstances.'"'
 "Robinson v. State, 528 So.2d 343, 346
(Ala.Cr.App. 1986) (quoting Young v. State, 494 So.2d 862 (Ala.Cr.App. 1986)). Instead of bringing this alleged violation to the attention of the trial court, the defense proceeded to trial without requesting any relief. Therefore, the appellant has waived any objection on this ground."
Mitchell v. State, 706 So.2d 787, 804
(Ala.Crim.App. 1997).
Similarly, here, Egbuonu failed to bring this allegedBrady violation to the trial court's attention, despite several opportunities to do so, until after he had been convicted and sentenced. Therefore, this issue is not properly before this Court for review.
 V.
Egbuonu contends that the evidence was insufficient to sustain his convictions. Egbuonu quotes the identity-theft statute, § 13A-8-192, Ala. Code 1975, and then states:
 "As [Egbuonu] was convicted utilizing insufficient evidence, [Egbuonu] submits that his conviction[s] and subsequent sentence[s] must be vacated, and this matter remanded for rehearings consistent with the findings of this Court. R. 199, 464."
(Egbuonu's brief at p. 34.) Egbuonu makes no other argument in this regard. He cites no other authority, includes no facts, and fails even to explain why he believes the evidence was insufficient to sustain his convictions. Clearly then, this argument fails to comply with Rule 28(a)(10) and is, therefore, deemed to be waived. See, e.g., L.J.K. v. State,942 So.2d 854 (Ala.Crim.App. 2005), and the cases cited therein.
 VI.
Although Egbuonu does not make this argument on appeal, we are obligated *Page 42 
to take notice that his convictions for two counts of identity theft violate double-jeopardy principles. This type of double-jeopardy transgression implicates the jurisdiction of the trial court and, thus, must be noticed by this Court. See, e.g., Ex parte Robey, 920 So.2d 1069 (Ala. 2004);Johnson v. State, 950 So.2d 371 (Ala.Crim.App. 2006); and McPherson v. State, 933 So.2d 1114
(Ala.Crim.App. 2005).
 Egbuonu was charged as follows: "The grand jury of said county charge that, before the finding of this indictment, ZEPHYRIUNS C EGBUONU, alias ZEPHYRINUS C EGBUONU, alias ZEPHYRINUS CHIEDU EGBUONU, whose name is to the grand jury otherwise unknown, with the intent to defraud for his own benefit or the benefit of a third person, and without the authorization, consent or permission of JAMES ROBERSON, did obtain, record, or access identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of JAMES ROBERSON, resulting in a financial loss of greater than $250, in violation of Section 13A-8-192
of the Alabama Criminal code, against the peace and dignity of the State of Alabama.
 "The grand jury of said county further charge that before the finding of this indictment, ZEPHYRIUNS C EGBUONU, alias ZEPHYRINUS C EGBUONU, alias ZEPHYRINUS CHIEDU EGBUONU, whose name is to the grand jury otherwise unknown, with the intent to defraud for his own benefit or the benefit of a third person, and without the authorization, consent or permission of JAMES ROBERSON, did obtain goods or services through the use of identifying information of JAMES ROBERSON resulting in a financial loss of greater than $250 in violation of Section 13A-8-192 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama."
(C. 27.) At the time of the crime in this case, [4]
§ 13A-8-192, Ala. Code 1975, provided, in pertinent part:
 "(a) A person commits the crime of identity theft if, without the authorization, consent, or permission of the victim, and with the intent to defraud for his or her own benefit or the benefit of a third person, he or she does any of the following:
 "(1) Obtains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of the victim.
 "(2) Obtains goods or services through the use of identifying information of the victim.
 "(3) Obtains identification documents in the victim's name.
 "(b) Identity theft in which there is a financial loss of greater than two hundred fifty dollars ($250) or the defendant has previously been convicted of identity theft constitutes identity theft in the first degree. Identity theft in the first degree is a Class C felony."[5]
In Ex parte Robey, supra, the Alabama Supreme Court faced an identical issue: *Page 43 
 "Robey was convicted of two counts of assault in the first degree arising out of the injuries to McNabb. On appeal, Robey argues that these two convictions, which are based on separate subsections of § 13A-6-20(a), [Ala. Code 1975,] violate his double-jeopardy rights. With good reason, the State concedes this issue.
 "In Ex parte Rice, 766 So.2d 143, 148
(Ala. 1999), we recognized the longstanding proposition that `the Double Jeopardy Clause, as a general rule, prohibits the State from subjecting a defendant to multiple punishments for the same offense.' In Blockburger v. United States, 284 U.S. 299, 304 (1932), the United States Supreme Court stated, `[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.'
 "However, in Rice we stated, `Because we are dealing here with a single statute . . . that defines a single offense, the Blockburger test is not applicable.' 766 So.2d at 150 (citing Sanabria v. United States, 437 U.S. 54, 70 n. 24 (1978)). We also stated in Rice that `when a statute provides alternative or different methods of committing the same offense, each alternative method is not to be treated as a separate offense.' 766 So.2d at 150 (citing Sisson v. State, 528 So.2d 1159 (Ala. 1988)). In the instant case, Robey was convicted of two counts of first-degree assault under two subsections of the same Code section. The pertinent subsections of § 13A-6-20(a), Ala. Code 1975, provide:
 "`(a) A person commits the crime of assault in the first degree if:
 "`. . . .
 "`(3) Under circumstances manifesting extreme indifference to the value of human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person; or
 "`. . . .
 "`(5) While driving under the influence of alcohol or a controlled substance or any combination thereof in violation of Section 32-5A-191 he causes serious bodily injury to the person of another with a motor vehicle.'
 "We conclude that the offense of first-degree assault under § 13A-6-20(a) `may be committed by several different methods, and the State may allege and prove any one or all of those various methods in its attempt to establish the defendant's guilt.' Rice, 766 So.2d at 150. We have found no indication that the Legislature intended to impose multiple punishments under the separate subsections of § 13A-6-20(a) when the actions described in each of those subsections are based on the same conduct of the accused, as well as the same injuries to the same victim. Therefore, punishing Robey twice for the same offense — first-degree assault — violated his double-jeopardy rights."
920 So.2d at 1070.
Similarly, here, the offense of identity theft may be committed by several different methods, and the State may allege and prove any one or all of those methods in its attempt to establish the defendant's guilt. We have found no indication that the legislature intended to impose multiple punishments under the separate subsections of § 13A-8-192(a) when the actions described in each of those subsections are based on the same conduct of the accused against the same victim. In *Page 44 
this case, it is clear that both of the charges against Egbuonu stemmed from the same theft — the theft of Deputy Chief Roberson's identity — and that the two charges were merely based on alternative methods of proving that single theft. Therefore, Egbuonu's convictions and sentences for two counts of identity theft for a single theft violate double-jeopardy principles, and we must remand this case for the entry of a new judgment.
As the Alabama Supreme Court explained in Ex parteRice, 766 So.2d 143 (Ala. 1999):
 "We note that merely ordering that Rice's sentences run concurrently is not a constitutionally acceptable option. The Supreme Court stated in Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985):
 "`The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See Missouri v. Hunter, 459 U.S. 359, 368[, 103 S.Ct. 673, 74 L.Ed.2d 535] (1983).
 "`The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See Benton v. Maryland, 395 U.S. 784, 790-91[, 89 S.Ct. 2056, 23 L.Ed.2d 707] (1969); Sibron v. New York, 392 U.S. 40, 54-56 [, 88 S.Ct. 1889, 20 L.Ed.2d 917] (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment'
"See, also, Rolling v. State, [673 So.2d 812
(Ala.Crim.App. 1995)].
"Neither is it an acceptable option to merely vacate one of Rice's convictions and its corresponding sentence. The jury specifically found that Rice had violated § 13A-6-2(a)(3) in two different ways — by participating in a kidnapping and causing Taylor's death and by participating in a robbery and causing Taylor's death. Based on the record before us, an appellate court's vacating one of Rice's convictions and its corresponding sentence would have the effect, albeit unintended, of nullifying a part of the jury's verdict. We think the better approach is for the Court of Criminal Appeals to remand the case to the trial court for the entry of a new order — an order that adjudges Rice guilty of Taylor's murder and sentences him for that single offense."
766 So.2d at 152-53.
Accordingly, we remand this case for the trial court to enter a new order that adjudges Egbuonu guilty of the single offense of identity theft and sentences him for that single offense.[6]
Due return shall *Page 45 
be filed with this Court within 35 days of the date of this opinion.
REMANDED WITH DIRECTIONS.*
BASCHAB, P.J., and McMILLAN, WISE, and WELCH, JJ., concur.
[1] The charges in this case stemmed solely from the account that was opened in Deputy Chief Roberson's name. The evidence relating to the account opened in the name of Rosemary Roberson was introduced by the State pursuant to Rule 404(b), Ala.R.Evid.
[2] The State's handwriting expert testified that only one portion of the handwriting on the paperwork associated with the mailbox was Egbuonu's — the address listed under the signature.
[3] Within this issue in his brief, Egbuonu states that he "was denied funds for defense witnesses." (Egbuonu's brief at p. 18.) However, in his reply brief, Egbuonu specifically states that he is not challenging the trial court's denial of his pretrial request for funds.
[4] "It is well settled that the law in effect at the time of the commission of the offense controls the prosecution."Minnifield v. State, 941 So.2d 1000, 1001
(Ala.Crim.App. 2005).
[5] Section 13A-8-192 was amended effective September 1, 2003, to increase the amount of loss for first-degree identity theft to $500. It was amended again effective April 5, 2006, to remove the requirement that a loss be suffered and to abolish the degrees of the crime.
[6] We pretermit discussion of Egbuonu's remaining issue pending the trial court's return to our remand.
* Note from the reporter of decisions: On February 22, 2008, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On March 21, 2008, that court denied rehearing, without opinion. On May 9, 2008, the Alabama Supreme Court denied certiorari review, without opinion (1070921).